**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LET EXPERIENCED PILOTS FLY, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:24-cv-00736 |
| v. | ) ) | Honorable Franklin U. Valderrama |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | ) ) ) ) | |
| Defendant. | ) ) | |

**BRIEF OF DEFENDANT AIR LINE PILOTS ASSOCIATION, INTERNATIONAL IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Marcus C. Migliore (*Bar No. 411674*)
Thomas N. Ciantra (*Bar No. 2370161*)
Antonia Bird (*Bar No. 171213004*)
AIR LINE PILOTS ASSOCIATION, INTERNATIONAL
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
Tel.: (202) 797-4054
Fax: (703) 481-2478
*Marcus.Migliore@alpa.org*
*Thomas.Ciantra@alpa.org*
*Antonia.Bird@alpa.org*

Barry M. Bennett
DOWD, BLOCH, BENNETT, CERVONE, AUERBACH & YOKICH LLP
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
Tel.: (312) 372-1361
Fax: (312) 372-6599
*bbennett@laboradvocates.com*

*Attorneys for Defendant Air Line Pilots Association, International*

March 20, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ ii

GLOSSARY OF DEFINED TERMS ............................................................................... v

PRELIMINARY STATEMENT.........................................................................................1

ALLEGED FACTS ...........................................................................................................3

      A.    The Parties ...............................................................................................3

      B.    The Age 65 Rule ......................................................................................4

      C.    ALPA's Age 65 Policy.............................................................................4

      D.    Alleged DFR Violations...........................................................................5

STANDARD OF REVIEW ...............................................................................................6

ARGUMENT .....................................................................................................................6

I.      The Duty of Fair Representation......................................................................6

II.     Plaintiff's DFR Claim Fails as a Matter of Law, as ALPA's Public Political Advocacy Does Not Implicate and is Not Germane to its Role as Exclusive Collective Bargaining Representative...................................................7

III.    The First Amendment Precludes Plaintiff's Claim. ..........................................9

IV.   The Six-Month DFR Statute of Limitations Bars Plaintiff's DFR Claim. ........12

CONCLUSION.................................................................................................................15

**TABLE OF AUTHORITIES**

Page(s):

**Cases:**

*Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir. 2006) ..............................9

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988)................................10, 11

*Ameritech v. Voices for Choices, Inc.*, No. 03 C 3014, 2003 WL 21078026 (N.D. Ill. May 12, 2003) ...................................................................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................6

*Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852 (5th Cir. 2000)...................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................................6

*Bhd. of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emps. v. Allen*, 373 U.S. 113 (1963) ........................................................................................................8

*Bishop* v. *ALPA*, 5 F.4th 684 (7th Cir. 2021) ...........................................................................6

*Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501 (7th Cir. 2013)...........................................3

*Buttry v. Gen. Signal Corp.*, 68 F.3d 1488 (2d Cir. 1995) .........................................................14

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) ....................................10, 11

*Carr v. Local Union 1593, Int'l Bhd. of Elec. Workers*, 371 F. Supp. 2d 1097 (D.N.D. 2005) ..............................................................................................................14

*Chapple v. Nat'l Starch & Chem. Co.*, 178 F.3d 501 (7th Cir. 1999) ..........................................12

*Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910 (7th Cir. 1999) .................................................14

*Cortina v. Hotel & Rest. Emps. Union*, No. 06-CV-6850, 2008 WL 857165 (N.D. Ill. Mar. 31, 2008) ..............................................................................................14

*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983).......................................................12

*Dozier v. TWA, Inc.*, 760 F.2d 849 (7th Cir. 1985).......................................................................12

*Dudich v. UAW Local Union No. 1250*, 454 F. Supp. 2d 668 (N.D. Ohio 2006) ..........................14

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)................................9

*Ellis v. Bhd. of Ry., Airline & S.S. Clerks Clerks*, 466 U.S. 435 (1984) .....................................8

*Emory v. United Airlines, Inc.*, 821 F. Supp. 2d 200 (D.D.C. 2011), *aff'd*, 720 F.3d 915 (D.C. Cir. 2013) ......................................................................................14

*Engelhardt v. Consol. Rail Corp.*, 756 F.2d 1368 (2d Cir.1985) ....................................14

*Freeman v. Loc. Union No. 135 Chauffeurs, Teamsters, Warehousemen & Helpers*, 746 F.2d 1316 (7th Cir. 1984) ..........................................................7

*Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643 (7th Cir. 1983)....................................10

*IAM v. Street*, 367 U.S. 740 (1961) ..............................................................................7, 8

*Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991)......................................................9

*Lewis v. Loc. Union 100*, 750 F.2d 1368 (7th Cir.1984) ................................................14

*Loc. No. 1424, Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411 (1960)........................14

*Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834 (7th Cir. 2011)......................11

*Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299 (7th Cir. 1983)......................................13

*Miller v. ALPA*, 108 F.3d 1415 (D.C. Cir. 1997), *aff'd*, 523 U.S. 866 (1998) .................8

*New West, L.P. v. City of Joliet*, 491 F.3d 717 (7th Cir. 2007) ....................................9, 11

*Parrish v. Freight Consolidation Servs., Inc.*, No. 86 C 3013, 1987 WL 10578 (N.D. Ill. May 1, 1987) ......................................................................13, 14

*Ramey v. Dist. 141, IAM*, 378 F.3d 269 (2d Cir. 2004) ..................................................13

*Scerba v. Allied Pilots Ass'n*, No. 13 Civ. 3694(LAK)(AJP), 2013 WL 6481583 (S.D.N.Y. Dec. 10, 2013), *aff'd*, 589 F. App'x 554, 557 (2d Cir. 2014)..........................14

*Scerba v. Allied Pilots Ass'n*, 589 F. App'x 554 (2d Cir. 2014)......................................13

*Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984)..................................7

*Sheikh v. Rabin*, 565 F. App'x 512 (7th Cir. 2014) ........................................................10

*Souter v. Int'l Union, UAW*, 993 F.2d 595 (7th Cir. 1993)...............................................7

*Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192 (1944)......................................6, 7

*Tarpley v. Keistler*, 188 F.3d 788 (7th Cir. 1999)..........................................9, 10, 11, 12

*United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262 (7th Cir. 1985).......................................................................................12, 14

*United Mine Workers v. Pennington*, 381 U.S. 657 (1965)........................................................9, 10

*United Nurses & Allied Prof'ls v. NLRB*, 975 F.3d 34 (1st Cir. 2020) ...........................................8

*Vaca v. Sipes*, 386 U.S. 171 (1967) ..............................................................................................6

*Wickstrom v. ALPA*, No. 23 C 2631, 2023 WL 5720989 (N.D. Ill. Sept. 5, 2023).........................7

**Constitution, Statutes, Regulations and Rules:**

U.S. Const. amend. I ......................................................................................................................9

45 U.S.C. §152, Eleventh................................................................................................................8

49 U.S.C. § 44729(a) .....................................................................................................................4

14 C.F.R. § 121.383(e) ...................................................................................................................4

Fed. R. Civ. P. 8(a)(2) ....................................................................................................................6

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................3

**Legislation:**

Let Experienced Pilots Fly Act, S. 893, 118th Cong. § 2 (2023-2024) ...........................................4

# GLOSSARY OF DEFINED TERMS

| | |
|---|---|
| Age 67 Bill | Let Experienced Pilots Fly Act, S. 893, 118th Cong. § 2 (2023-2024) |
| ALPA | Defendant Air Line Pilots Association, International |
| App. | Appendix (filed herewith) |
| Compl. | Complaint for Breach of Duty of Fair Representation, DE #1 |
| DFR | duty of fair representation |
| FAC | First Amended Complaint for Breach of Duty of Fair Representation, DE #21 |
| LEPF | Plaintiff Let Experienced Pilots Fly, Inc. |
| MEC | Master Executive Council |
| Migliore Decl. | Declaration of Marcus C. Migliore (Mar. 20, 2024) (filed herewith) |
| RLA | Railway Labor Act, 45 U.S.C. §§ 151-188 |

**PRELIMINARY STATEMENT**

On January 27, 2024, non-profit corporation, Let Experienced Pilots Fly, Inc. ("LEPF"), which consists of an undisclosed number of present and former airline pilots (and others), sued the Air Line Pilots Association, International ("ALPA"), seeking to silence the union's outspoken opposition to increasing the federal statutory mandatory pilot retirement age from 65 to 67. Compl., DE #1. Plaintiff alleged that ALPA's lobbying effort in opposition to the proposed legislation somehow amounts to a breach of the union's duty of fair representation ("DFR"). ALPA responded with its motion to dismiss on February 15, 2024, and showed the defects of the initial complaint. DE #14. Specifically, ALPA showed that LEPF's DFR claims are baseless as a matter of law and fail for *each* of three independent reasons, because: (1) ALPA's lobbying activities do not relate to collective bargaining or administration with an employer, as they must to come under the DFR; (2) the relief sought—a prior restraint on ALPA's lawful speech—cannot be granted under any circumstances under the First Amendment; and (3) the DFR claims are time-barred under the applicable six-month statute of limitations. ALPA requested that this Court dismiss this case for failure to state a claim under Rule 12(b)(6), without leave to replead. Confronting these deficiencies, Plaintiff filed its First Amended Complaint ("FAC") on March 8, 2024. FAC, DE #21. But as we show below, the FAC is just as frivolous as the original, retaining each of these fatal defects.

The DFR governs a union's actions as the exclusive representative of employees in collective bargaining, *i.e.*, negotiating labor agreements with employers and enforcing them. Lobbying Congress concerning potential legislation to change federal statutory requirements is neither contract negotiation nor administration. It is, rather, political speech that is not germane to collective bargaining under settled law and which (incidentally) no pilot represented by ALPA

is required to support. ALPA's political activity is not subject to the DFR. It is, however, protected by the First Amendment.

LEPF takes heated issue with ALPA's position on the Age 65 pilot retirement age, but ALPA members decided on that policy through the union's democratic process, as LEPF concedes. ALPA's Executive Board in May 2022 unanimously directed that the union "will not support and shall actively oppose regulatory or legislative efforts that would modify the Age 65 Rule" and ALPA's governing Board of Directors, comprised of representatives democratically elected by ALPA member pilots, unanimously reaffirmed that policy in October 2022. LEPF could not prevail in ALPA's internal governance process, so it turns to this Court, asking it to enjoin ALPA from voicing the membership's view to Congress and the public while permitting LEPF's contrary lobbying efforts to continue undisturbed. The blatant restraint on the union's First Amendment rights that LEPF seeks is contrary to law. In any event, even if this Court were (somehow) to conclude that ALPA's political position opposing any change to the statutory pilot retirement age, which has been well known to Plaintiff and others since at least May 2022, is subject to the DFR (and it is not), *and* that ALPA's activity in opposing a change to the Age 65 Rule is not protected by the First Amendment (and it is), LEPF's claim is facially time-barred under the DFR's six-month limitations period. ALPA's protected free speech carrying out that 2022 policy does not, contrary to the only significant new allegation of the FAC, constitute a "continuing violation" that can save this meritless and First Amendment-precluded claim from the applicable statute of limitations. And, as noted above, the FAC continues to independently fail for *each* of the three reasons ALPA has identified.

This baseless litigation remains nothing more than a publicity stunt by some who take issue with ALPA's advocacy on this matter of public importance. The Court should dismiss it under Rule 12(b)(6) without leave to replead.

## ALLEGED FACTS

The following facts are as recited in the FAC and supplemented by documents referenced therein.[1]

### A.    The Parties

Plaintiff LEPF is a professional trade association seeking to permit pilots "to continue their flying careers past the current mandatory retirement age of 65." FAC ¶¶ 1, 13. Its "members consist of thousands of pilots and other professionals in the aviation industry," most of whom, it claims, "are or recently have been" pilots or ALPA members. *Id.* ¶¶ 1, 2.[2]

ALPA is the certified collective bargaining representative under the Railway Labor Act ("RLA") for airline pilots at most of the airlines throughout the United States and is the largest airline pilot union in the world, representing more than 77,000 pilots at 42 U.S. and Canadian airlines. *Id.* ¶¶ 3, 14. As the "largest, loudest and most wide-spread group" opposing raising the pilot retirement age, ALPA is "negatively affecting the chances that" legislation increasing the retirement age will be adopted. *Id.* ¶ 10.

---

[1] The Court may consider the documents in the attached Appendix because the FAC refers to them and they are "central to" the DFR claim. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013).

[2] LEPF's standing is subject to serious question. LEPF asserts it has members who are former ALPA pilots, along with "other professionals in the aviation industry." FAC ¶¶ 1, 2. But ALPA represents neither group in collective bargaining and does not owe them a DFR. *See* discussion and authorities *infra* pages 6-7. ALPA reserves the right to challenge LEPF's standing to contest ALPA's actions.

### B. The Age 65 Rule

Pilots who fly large commercial passenger or cargo aircraft must retire on their 65th birthday by statute and regulation. 49 U.S.C. § 44729(a); 14 C.F.R. § 121.383(e); FAC ¶ 4. Congressional efforts to raise the Age 65 retirement age began in 2022. FAC ¶ 52. In March 2023, the Senate introduced a bill entitled Let Experienced Pilots Fly Act (hereinafter "Age 67 Bill"), which would extend the mandatory retirement age from 65 to 67. S. 893, 118th Cong. § 2 (2023-2024); FAC ¶¶ 5, 43-44. ALPA has long opposed a change to the statutory retirement age and opposed these efforts.

### C. ALPA's Age 65 Policy

"ALPA's policies are established by its Board of Directors and Executive Board." FAC ¶ 19. The Board of Directors consists of democratically elected pilot representatives from each airline where ALPA represents pilots, and the Executive Board consists of the chairman of each airline's ALPA Master Executive Council.[3] *Id.* In October 2020, the ALPA Board of Directors adopted a resolution endorsing an initiative to "Oppose any increase in the pilot retirement age in the U.S. beyond the current U.S. retirement age of 65." Declaration of Marcus C. Migliore ("Migliore Decl.") ¶ 3 & App. 1-3 (ALPA 48th Board of Directors Meeting Oct. 2020 – Agenda Item #13, pp. 39, 52-53).

On May 19, 2022, with legislation increasing the retirement age being discussed, the ALPA Executive Board directed as a matter of formal Association policy that the union "will not support and shall actively oppose regulatory or legislative efforts that would modify the Age 65 Rule." Migliore Decl. ¶ 4 & App. 4-5 (ALPA 130th Executive Board Meeting May 2022-Agenda Item #9, pp. 32-33). It further resolved that ALPA would "actively engage and leverage

---

[3] ALPA represents pilots at each airline through a coordinating council known as a Master Executive Council ("MEC"). *See id.*

legislative advocacy resources and political action activities to educate elected representatives and officials in their fundamental responsibility to maintain public safety and 'safe skies.'" *Id.*; *see also* FAC ¶ 52. That same day, ALPA publicly announced this policy in a press release. FAC ¶ 52.

In October 2022, ALPA's highest governing body, its Board of Directors, reaffirmed ALPA's Age 65 Policy to "Oppose any increase in the pilot retirement age in the U.S. beyond the current U.S. retirement age of 65." Migliore Decl. ¶ 5 & App. 6-8 (ALPA 49th Board of Directors Meeting Oct. 2022- Agenda Item #13, pp. 28, 43-44).

### D. Alleged DFR Violations

LEPF's suit "arises out of ALPA's ongoing campaign against" proposed legislation increasing the pilot retirement age to 67, a campaign conducted "in the media, public forums and to legislators." FAC ¶¶ 5, 97. LEPF describes ALPA's "aggressive and widespread lobbying efforts against the pending Age 67 legislation" as an "anti-senior pilot campaign" in breach of the DFR, *id.* ¶ 8, supported by allegedly false arguments made (1) in "talking points" documents ALPA prepared to use to oppose the legislation, *id.* ¶¶ 60, 62; (2) by union leadership on television and on the radio, *id.* ¶ 65; (3) in website articles, *id.* ¶¶ 8, 52, 70-71, 76, 84, 90, 101, 121; (4) on social media, *id.* ¶¶ 8, 76, 120; (5) in January 2023 and January 2024 letters to Congress, *id.* ¶¶ 76, 104; and (6) in a January 15, 2024, "Letter to the Editor" from ALPA's President published in the Wall Street Journal, *id.* ¶ 97. LEPF bemoans ALPA's advocacy as "negatively affecting the chances that the pending legislation will be passed." *Id.* ¶ 10.

The lawsuit seeks a declaratory judgment that ALPA's opposition to the proposed Let Experienced Pilots Fly Act breaches the DFR because it seeks to benefit "politically powerful younger pilots" at the expense of "older pilots." *Id.* ¶¶ 6, 126. LEPF seeks to enjoin ALPA's

public speech and advocacy in opposition to the Age 67 Bill.  *Id.* ¶ 129; *see id.*, Prayer for Relief ¶¶ C, D.  In addition, LEPF seeks attorneys' fees and costs.  *Id.*, Prayer for Relief ¶¶ F, G.

## STANDARD OF REVIEW

Rule 12(b)(6) requires courts to view complaints in the light most favorable to plaintiffs and assume specific factual allegations are true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  But allegations that are "no more than conclusions [] are not entitled to the assumption of truth," and even factual allegations must "plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 681 (2009).  Plaintiffs may not offer "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at 678-79.  A "plausible" claim requires more than the "conceiv[ability]" or "sheer possibility" of unlawful conduct.  *Id.* at 678; *Twombly*, 550 U.S. at 570.  Absent such plausibility, the complaint must be dismissed because it "has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief[.]'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### I.    The Duty of Fair Representation

Although the RLA does not specifically state that a union possesses a "duty of fair representation" toward its members, that duty has been implied as a necessary corollary of a union's exclusive right to represent all employees within a bargaining unit in negotiating terms and conditions of employment.  *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 198-201 (1944).  The DFR requires a union "to serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct" in its collective bargaining and in enforcing the collective bargaining agreement.  *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *see generally Bishop v. ALPA*, 5 F.4th 684, 694-95 (7th Cir. 2021).

The DFR does not apply to matters outside a union's role as exclusive collective bargaining representative of employees vis a vis employers. *Freeman v. Loc. Union No. 135 Chauffeurs, Teamsters, Warehousemen & Helpers*, 746 F.2d 1316, 1321 (7th Cir. 1984) ("If a union does not serve as the exclusive agent for the members of the bargaining unit with respect to a particular matter, there is no corresponding duty of fair representation."); *Wickstrom v. ALPA*, No. 23 C 2631, 2023 WL 5720989, at *7 (N.D. Ill. Sept. 5, 2023); *cf. Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 375-76 & n.22 (1984). Nor does it apply to persons the union does not represent in collective bargaining. *Souter v. Int'l Union, UAW*, 993 F.2d 595, 597 n.1 (7th Cir. 1993).

## II. Plaintiff's DFR Claim Fails as a Matter of Law, as ALPA's Public Political Advocacy Does Not Implicate and is Not Germane to its Role as Exclusive Collective Bargaining Representative.

LEPF alleges that ALPA violated the DFR by "aggressive and widespread lobbying" against the Age 67 Bill. FAC ¶ 8. That claim fails as a matter of law because the DFR does not apply to a union's "lobbying" on proposed legislation. As noted above, the DFR arises because a union has an exclusive right to represent all employees within a unit in collective bargaining with an employer over terms and conditions of employment. *Steele*, 323 U.S. at 198-202.

It has long been settled that a union is not representing employees in bargaining with an employer when it takes a position with respect to legislation or government regulation. *See, e.g.*, *IAM v. Street*, 367 U.S. 740, 768 (1961) (funds used "to support candidates for public office, and advance political programs" are not connected to the union's "expenses of the negotiation or administration of collective agreements, or the expenses entailed in the adjustment of grievances and disputes"). Anyone can take a position on political issues, and anyone can petition government representatives regarding legislation and regulations. For that reason, the duty does

not apply to lobbying activities, and LEPF's claim that ALPA's "aggressive and widespread lobbying efforts," FAC ¶ 8, violate the DFR necessarily fails as a matter of law.

LEPF's conclusory assertions that ALPA's lobbying is part of its germane union activities does not avoid the well-established doctrine holding the opposite. *See*, *e.g.*, FAC ¶¶ 6, 110, 117, 120-22. For sixty years courts have ruled that unions' lobbying and other political activities are not related to collective bargaining. The RLA permits unions to enter into agreements requiring that all employees covered by a collective bargaining agreement pay union dues, or an equivalent amount in agency fees. 45 U.S.C. §152, Eleventh. However, the statute permits objecting nonmembers who may disagree with a union's political policies and activities to only pay for the union activities that are "germane to collective bargaining." *Bhd. of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emps. v. Allen*, 373 U.S. 113, 121-22 (1963); *see also Ellis v. Bhd. of Ry., Airline & S.S. Clerks Clerks*, 466 U.S. 435, 445-56 (1984); *Street*, 367 U.S. at 768-69 (holding that the RLA denies unions, "over an employee's objection, the power to use his exacted funds to support political causes which he opposes").

It is established that "germane" activities do *not* include a union's petitioning the government. ALPA is acutely aware of this. In *Miller v. ALPA*, the D.C. Circuit held that ALPA's lobbying activities involving aviation safety were not "germane" to its duties as a collective bargaining representative to the extent those activities involved contact with government agencies or Congress, and for that reason nonmembers are not required to pay their share of those costs. 108 F.3d 1415, 1422-23 (D.C. Cir. 1997) ("If there is any union expense that … must be considered furthest removed from 'germane' activities, it is that involving a union's political actions."), *aff'd*, 523 U.S. 866 (1998); *see also United Nurses & Allied Prof'ls v. NLRB*, 975 F.3d 34, 35, 41 (1st Cir. 2020) (upholding the NLRB's ruling that lobbying expenses are not

germane to collective bargaining); *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 517 (1991) (noting that *Allen* and *Street* establish that political or ideological activities are not germane to collective bargaining functions). ALPA's political advocacy does not, and cannot, breach the DFR because such activity is not germane to ALPA's role as the exclusive collective bargaining representative as a matter of law.

## III. The First Amendment Precludes Plaintiff's Claim.

LEPF's DFR allegations unquestionably challenge ALPA's protected First Amendment activities. *E.g.*, FAC ¶ 5 ("[t]his action arises out of … ALPA's ongoing campaign" against legislation that would increase the pilot retirement age to 67). If the DFR somehow prohibited ALPA from petitioning Congress or a federal agency and advocating a position with respect to the Age 67 Bill (which it does not), then the duty would directly conflict with the First Amendment, which states, in part that: "Congress shall make no law … abridging … the right of the people … to petition the government for a redress of grievances." U.S. Const. amend. I. The *Noerr-Pennington* doctrine, which the Supreme Court developed over five decades ago, *see E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), recognizes that it is contrary to the First Amendment to hold parties liable for their political efforts to influence public officials.

As the Seventh Circuit has held, the doctrine "recognizes both the reach of the First Amendment right to petition and the limited ability of Congress to fetter that right." *Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999). The "*Noerr-Pennington* doctrine protects litigation, lobbying, and speech [and] has been extended beyond the antitrust laws, where it originated, and is today understood as an application of the first amendment's speech and petitioning clauses." *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007); *see*, *e.g.*, *Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1193 (9th Cir. 2006) (applies to Fair Housing Act

and Americans with Disabilities Act claims); *Tarpley*, 188 F.3d at 794-95 (claims brought under 42 U.S.C. § 1983). The doctrine also protects efforts by citizens or groups to influence federal agencies, such as the FAA. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 513 (1972); *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 650-51 (7th Cir. 1983) (petitioning activity to the SEC was privileged under *Noerr-Pennington* and thus required dismissal of claim for tortious interference with business relationship).

Here, LEPF's DFR claims are all based on ALPA's opposition to the Age 67 Bill made in the "media, public forums, and to legislators." FAC ¶ 97. ALPA's "lobbying campaign"—the goal of which is to maintain the current Age 65 Rule—is plainly protected First Amendment petitioning activity, and LEPF's conclusory assertions that ALPA's lobbying is part of its germane union activities does not evade application of the *Noerr-Pennington* doctrine. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 510 (1988) (concerted efforts to influence "governments through direct lobbying, publicity campaigns, and other traditional avenues of political expression" constitute petitioning). Even if the DFR covered ALPA's political activities, the FAC would be properly dismissed under the *Noerr-Pennington* doctrine.

None of this is altered by LEPF's spurious allegations that ALPA is acting to disadvantage older pilots. "Immunity under *Noerr-Pennington* applies 'regardless of intent or purpose.'" *Sheikh v. Rabin*, 565 F. App'x 512, 517 (7th Cir. 2014) (quoting *Pennington*, 381 U.S. 670); *Havoco*, 702 F.2d at 650 (negative intent of result "has no effect on the First Amendment's protection, as long as the activity represents a genuine attempt to influence governmental action"); *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859 (5th Cir. 2000) ("*Noerr-Pennington* immunity applies to any concerted effort to sway public officials regardless of the private citizen's intent."). Accordingly, the doctrine allows individuals and entities to

"petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others." *Tarpley*, 188 F.3d at 794. ALPA's efforts to oppose raising the pilot retirement age are immune from challenge even though LEPF members disagree with them.

ALPA's alleged "misrepresentations" in support of its position are also protected activity. *Id.*; *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 838, 849 (7th Cir. 2011) (*Noerr-Pennington* doctrine applied "to misrepresentations made to the public during the course of [defendant's] public relations campaign," which included a warning of potential danger should the government agree to a zoning request and a letter to the local newspaper urging the community to put political pressure on the government). Even assuming, *arguendo*, that LEPF's allegations that ALPA's "lobbying campaign" is based on false statements or is generally false and misleading are correct (and they are not), they do not strip ALPA of *Noerr-Pennington* immunity under the First Amendment. That is because "lobbying is protected whether or not the lobbyist used deceit." *New West*, 491 F.3d at 722 (*Noerr-Pennington* doctrine applies to allegedly biased lobbying and public statements); *Mercatus Grp.*, 641 F.3d at 848-49 (*Noerr-Pennington* immunity applied to alleged misrepresentations made to the local government and made to the public in the public relations campaign); *Allied Tube & Conduit Corp.*, 486 U.S. at 499-500 ("A publicity campaign directed at the general public, seeking legislation or executive action, enjoys antitrust immunity even when the campaign employs unethical and deceptive methods."); *Cal. Motor Transp. Co.*, 404 U.S. at 510, 513 (misrepresentations are "condoned in the political arena").

LEPF's requested remedy of enjoining ALPA from continuing its lobbying efforts and campaigning against the Age 67 Bill would impermissibly silence ALPA's political speech and

advocacy rights.  Not only would it improperly stifle ALPA's constitutionally protected petitioning activities, but the requested relief would permit LEPF and others who support the Age 67 Bill an open field to advocate in favor of the proposed legislation at the expense of ALPA's protected rights to oppose it.  *See*, *e.g.*, FAC ¶ 104 (letter to Congress supporting the Age 67 Bill from present and retired pilots); *Tarpley*, 188 F.3d at 795-96 (refusing to vindicate plaintiff's First Amendment right of association at the expense of defendant's First Amendment right to petition the government); *Ameritech v. Voices for Choices, Inc.*, No. 03 C 3014, 2003 WL 21078026, at *1-2 (N.D. Ill. May 12, 2003) (denying request to enjoin defendant "from carrying out a public lobbying campaign in opposition to a bill pending in the Illinois state legislature" because not only would it "offend the First Amendment's guarantee to free speech, it would detrimentally affect democracy generally").  LEPF can articulate no set of facts under which an injunction barring ALPA's lobbying efforts in support of the Age 65 Rule would be permissible under the First Amendment.

## IV.    The Six-Month DFR Statute of Limitations Bars Plaintiff's DFR Claim.

Even if LEPF could state a DFR claim, it would be time-barred under the six-month limitations period governing DFR suits.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70 (1983); *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1270, 1273 (7th Cir. 1985).  That period began to run when LEPF members "discover[ed], or in the exercise of reasonable diligence should have discovered, the acts constituting" ALPA's alleged DFR breach.  *Dozier v. TWA, Inc.*, 760 F.2d 849, 851-52 (7th Cir. 1985) (internal quotations omitted) (limitations period began to run when union "informed plaintiff in no uncertain terms" that his "grievance will not be processed any further").

Here, LEPF's DFR claim is based on ALPA's position and opposition to the Age 67 Bill.  ALPA's position on Age 65 was publicly announced and known by no later than May 2022,

twenty months before LEPF sued on January 27, 2024. LEPF alleges that ALPA was "[a]ware of Congressional efforts to raise" the pilot retirement age in 2022 and its Executive Board adopted a resolution as formal policy opposing any effort to do so in May 2022, which it publicly announced at that time. FAC ¶ 52; Migliore Decl. ¶ 4 & App. 4-5 (May 18, 2022, Executive Board resolution). That Executive Board action was reaffirmed by the ALPA Board of Directors in October 2022. *See* Migliore Decl. ¶ 5 & App. 6-8. Any 2024 DFR claim based on ALPA's stated 2022 policy opposition to raising the pilot retirement age and implementation of that policy is clearly time-barred by the six-month limitations period. *See*, *e.g.*, *Chapple v. Nat'l Starch & Chem. Co.*, 178 F.3d 501, 505 (7th Cir. 1999) (claims accrued the date plaintiffs "were notified that the union was not going to pursue their grievances;" and as to other plaintiffs, "the date the arbitrator issued its decision against them"); *Scerba v. Allied Pilots Ass'n*, 589 F. App'x 554, 557 (2d Cir. 2014) (limitations period ran from when the union's "Board of Directors voted to approve the new CBA agreement-in-principle as a tentative agreement" as the BOD's vote was "an action adverse to plaintiffs' interest"); *Ramey v. Dis. 141, IAM*, 378 F.3d 269, 278 (2d Cir. 2004) ("[T]he breach occurs when the union acts against the interests of its members."); *Parrish v. Freight Consolidation Servs., Inc.*, No. 86 C 3013, 1987 WL 10578, at *2 (N.D. Ill. May 1, 1987) ("The event which triggers the statute of limitations is the execution or issuance of an allegedly illegal document or decision and not its later enforcement or implementation." (citing *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 305-06 (7th Cir. 1983)).

Since May 2022, ALPA has not revised its position regarding retirement age, indeed it has only amplified it, and Plaintiff's attempts to save its untimely action by alleging a continuing violation fail. *See*, *e.g.*, FAC ¶¶ 8, 16, 55, 59, 64, 70, 74, 83, 88, 96, 108. Plaintiff's unsubstantiated assertion that ALPA's lobbying actions are a continuing violation has already

been rejected by another federal court. *See Emory v. United Airlines, Inc.*, 821 F. Supp. 2d 200, 233-34 & n.26 (D.D.C. 2011) (ALPA's actions of promoting its interpretation of the Age 65 regulation to Congress was "insufficient to establish a continuing claim;" and holding that the DFR action accrued "when the plaintiff[s] initially learn[ed] (or should have learned) of the ALPA's interpretation of the FTEPA" (alterations in original; quotation and citation omitted)), *aff'd*, 720 F.3d 915 (D.C. Cir. 2013). Moreover, in a similar fashion, courts have rejected continuing violation arguments based on the continued effects of a union's act. *See Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 915 (7th Cir. 1999) (feeling the effects of a violation does not render a decision a continuing violation; "[T]here is no continuing violation sufficient to delay the statute of limitations if the conduct within the six month period is only unlawful in light of conduct outside of the six month period." (citing *Loc. No. 1424, Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411, 422 (1960), and *Lewis v. Loc. Union 100*, 750 F.2d 1368, 1369 (7th Cir.1984)).[4] As the Seventh Circuit held in *United Independent Flight Officers*, "the concept of continuing violation is not applicable … in DFR actions" premised on the negotiation of a collective bargaining agreement. 756 F.2d at 1273 & n.14.

Here, the statute of limitations began to run by May 2022 because LEPF knew or should have known by then that ALPA was (allegedly) acting in a manner adverse to its interests and has

---

[4] *See also, e.g.*, *Christiansen*, 178 F.3d at 916 ("subsequent union action on the same [matter] does not restart the limitations clock"); *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492-93 (2d Cir. 1995) (same); *Engelhardt v. Consol. Rail Corp.*, 756 F.2d 1368, 1370 (2d Cir.1985) (same); *Cortina v. Hotel & Rest. Emps. Union*, No. 06-CV-6850, 2008 WL 857165, at *7 (N.D. Ill. Mar. 31, 2008) (negative continued effects from creation of seniority list were not continuing violations); *Parrish*, 1987 WL 10578, at *3 (no continuing violation where plaintiffs "have not alleged any new unlawful conduct by defendants; they have merely alleged a continuing adverse consequence of the prior conduct …"); *Scerba v. Allied Pilots Ass'n*, No. 13 Civ. 3694 (LAK) (AJP), 2013 WL 6481583, at *14 (S.D.N.Y. Dec. 10, 2013), *aff'd*, 589 F. App'x 554, 557 (2d Cir. 2014); *Dudich v. UAW Local Union No. 1250*, 454 F. Supp. 2d 668, 679 (N.D. Ohio 2006); *Carr v. Local Union 1593, Int'l Bhd. of Elec. Workers*, 371 F. Supp. 2d 1097, 1113 (D.N.D. 2005).

no excuse for waiting beyond the statute of limitations to file its baseless and untimely claim. Even if the DFR could apply here to ALPA's political position opposing any change to the retirement age (and as we demonstrate, it cannot), any DFR claim would be time-barred.

## CONCLUSION

For the foregoing reasons, the Court should grant ALPA's motion and dismiss. Because the relief Plaintiff seeks cannot be granted under any set of allegations consistent with the First Amendment, dismissal should be entered without leave to replead.

Dated: March 20, 2024

Respectfully submitted,

_/s/ Barry M. Bennett_

Marcus C. Migliore (*Bar No. 411674*)
Thomas N. Ciantra (*Bar No. 2370161*)
Antonia Bird (*Bar No. 171213004*)
AIR LINE PILOTS ASSOCIATION,
   INTERNATIONAL
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
Tel.: (202) 797-4054
Fax: (703) 481-2478
*Marcus.Migliore@alpa.org*
*Thomas.Ciantra@alpa.org*
*Antonia.Bird@alpa.org*

Barry M. Bennett
DOWD, BLOCH, BENNETT, CERVONE,
   AUERBACH & YOKICH LLP
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
Tel.: (312) 372-1361
Fax: (312) 372-6599
*bbennett@laboradvocates.com*

*Attorneys for Defendant Air Line Pilots Association, International*